James A. GARAVUSO, Plaintiff,

v.

**SHOE CORPORATIONS OF AMERICA INDUSTRIES, INC., Defendant.**

No. C–2–86–1164.

United States District Court, S.D. Ohio, E.D.

March 22, 1989.

1424

Fred J. Milligan, Jr., Westerville, Ohio, for plaintiff.

Emily J. Lewis, Porter, Wright, Morris & Arthur, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

GRAHAM, District Judge.

This action was originally filed in the Court of Common Pleas of Franklin County, Ohio on August 29, 1986. A petition for removal of the action to this court was filed by defendant on September 29, 1986 on the basis of federal question jurisdiction.

The complaint of plaintiff, James A. Garavuso, as amended, alleges five claims against the defendant, Shoe Corporations of America Industries, Inc. ("SCOA"), plaintiff's former employer. Count 1 of the complaint alleges breach of contract based upon SCOA's decision not to pay plaintiff severance benefits under SCOA's severance pay plan. Count 2 advances the same claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Count 3 of the complaint seeks a declaratory judgment to the effect that if plaintiff is not immediately eligible for severance payments, he would nonetheless be entitled to benefits if he is laid off in the future by his current employer, Morse Shoe Company. Count 4 asserts a common law claim for interference with an employment relationship. Count 5 asserts a claim under ERISA for interference with protected rights under 29 U.S.C. § 1140.

This matter is now before the court on defendant's motion for summary judgment. The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any; show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in light favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Defendant contends that the claim for breach of contract advanced in Count 1 is preempted by ERISA. Plaintiff does not disagree with this argument. The preemption provision in 29 U.S.C. § 1144(a) is broadly construed to encompass any law which "relates to", that is, has a connection with or reference to, an employee benefit plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). The SCOA severance pay plan is an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1). The Sixth Circuit held in *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir. 1985) that a state law cause of action for breach of contract in regard to a severance pay plan was preempted by ERISA. This court finds as a matter of law that plaintiff's breach of contract claim advanced in Count 1 is preempted by ERISA.

■ Defendant next seeks summary judgment on Count 2 of the complaint in which plaintiff seeks to recover benefits under ERISA pursuant to 29 U.S.C. § 1132(a)(1)(B). The first issue presented is which standard of review should be applied to defendant's decision to deny benefits under the SCOA severance pay plan. The parties have been given the opportunity to brief this issue. However, upon review of the relevant authorities, the court has concluded that it is prepared to decide the issue without further briefing. The standard traditionally applied has been whether the denial of benefits was arbitrary and capricious, in bad faith, or otherwise contrary to law. *Adcock v. Firestone Tire & Rubber Co.*, 822 F.2d 623 (6th Cir. 1987); *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988). However, the Supreme Court recently rejected the use of the arbitrary and capricious standard under some circumstances. *See Firestone Tire & Rubber Co. v. Bruch*, —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Bruch*, —— U.S. at ——, 109 S.Ct. at 956–957, the Supreme Court held that a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) must be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe plan terms. Firestone's decisions under its termination pay plan were held to be subject to *de novo* review.

■ The SCOA severance pay plan resembles the Firestone plan at issue in *Bruch* in many respects. Defendant, through its personnel officers, served as administrator of the SCOA severance pay plan, which was unfunded. SCOA, like Firestone, made any decisions regarding eligibility for severance pay. While the SCOA plan does specifically vest discretion in the president of the Retail Footwear Division to grant "other" allowances based on the individual circumstances of an involuntary termination, the plan contains no language, insofar as the benefits expressly itemized in the plan are concerned, granting SCOA the power to construe uncertain

terms or providing that eligibility determinations are to be regarded with deference. The Supreme Court, in construing the similar Firestone plan, noted that the mere fact that the company, as administrator, exercised discretion and control over the payment of benefits was not sufficient to permit review under the arbitrary and capricious standard. *See Bruch*, —— U.S. at ——, 109 S.Ct. at 954–956. The court concludes that SCOA's decision to deny severance benefits to plaintiff is subject to *de novo* review, including an examination of plan terms in light of all the circumstances and any evidence of the intent of the parties.

The evidence submitted by way of depositions, affidavits and documents reveals that plaintiff was employed by the Retail Footwear Division of SCOA on February 14, 1977 as manager of SCOA's distribution center in Columbus, Ohio. SCOA's Retail Footwear Division operated several company-owned shoe stores, and held leases to shoe departments in other department stores, including Hills Department Stores, Higbee's and Lazarus. When the position of manager of the distribution center was eliminated in August of 1985, plaintiff accepted the job of manager of purchasing.

In December of 1985, SCOA Industries was purchased by the Hills Stores Company in a leveraged buyout. SCOA, which was previously a publicly held corporation, became a privately held corporation as a result of the buyout. Incident to the purchase, the decision was made to dissolve SCOA's Retail Footwear Division, and to lay off the fifty to sixty employees at the distribution center and the approximately three hundred employees at the corporate offices.

The Morse Shoe Company assumed SCOA's leases of approximately one hundred and thirty shoe departments in Hills Department Stores. Morse Shoe made offers of employment to a majority of the employees in those departments, and a majority of those offered employment accepted. Morse also made employment offers to some employees at the corporate headquarters and distribution center. SCOA's

leases in two hundred out of approximately two hundred and seventy-four Gallenkamp, By–Way and Shoe Salon shoe stores were assumed by the Volume Shoe Corporation. Tishkoff Enterprises, Inc. assumed SCOA's leases in the shoe departments in a number of other department stores and made offers of employment to approximately seventy employees at the Retail Footwear Division's corporate offices.

Decisions concerning the payment of severance benefits were usually made by Joseph O'Riordan, the former vice president of administration at SCOA. When SCOA was purchased by Hills Store Company, Larry Miller, vice president of personnel at Hills, was assigned to oversee the termination of employees and operations, and to assure a smooth transition between SCOA's management of the various shoe departments and the take-over of those departments by the acquiring companies. Mr. Miller was responsible for making sure that severance payments were made in conformance with SCOA's policy. However, Mr. O'Riordan continued to have some input into the eligibility determinations.

Plaintiff was originally scheduled to be laid off on March 21, 1986. Mr. O'Riordan had learned prior to that date that Morse Shoe had expressed some interest in plaintiff as a possible candidate for a position at Morse Shoe. When Morse Shoe had not made an offer to plaintiff by March 21, Mr. Miller made the decision to delay plaintiff's layoff and to keep him on the payroll pending receipt of Morse Shoe's decision whether or not to make plaintiff an offer. The deposition testimony of Mr. Miller and Mr. O'Riordan indicates that the layoff was delayed due to Mr. O'Riordan's concern about plaintiff being unemployed and the fact that it is often more difficult to find a job if one is unemployed. Mr. O'Riordan expressed his hope that he could use his influence to obtain an offer for plaintiff, and he arranged an interview for plaintiff with Charles Messina, president of Morse Shoe. Mr. Miller instructed Mr. O'Riordan to keep plaintiff on the payroll pending the decision of Morse Shoe. Plaintiff objected to the delay and indicated he wanted his severance benefits. Mr. O'Riordan told

him that he had not heard from Morse Shoe regarding a job offer and that it would be in plaintiff's best interest to extend his employment for two weeks. Mr. Miller and Mr. O'Riordan were informed by Mr. Messina shortly before April 11, 1986 that plaintiff had been offered a position at Morse Shoe and that plaintiff had accepted the offer, contingent upon his wife's approval of the Boston area and their ability to afford housing. Mr. Miller then instructed Mr. O'Riordan that April 11 would be plaintiff's last day. Plaintiff was advised that he would not be paid the severance allowance. Mr. O'Riordan testified that he told plaintiff that if plaintiff ultimately decided to reject the Morse offer and not relocate, he could be paid severance benefits. While plaintiff denied in his deposition that he was so informed by Mr. O'Riordan, he acknowledged that he was told by Mr. Schulte that if he refused the Morse Shoe job, he would receive severance pay.

Plaintiff was terminated April 11, 1986. His termination slip initially showed that plaintiff was resigning. When plaintiff objected, the notation was changed to reflect that he was being terminated per Mr. Miller's instructions. Mr. Miller testified in his deposition that he did not instruct that plaintiff be terminated with the indication on the form that plaintiff resigned. Plaintiff was paid for two weeks vacation following his lay-off. Plaintiff applied for unemployment benefits and was found to be unemployed by the Ohio Bureau of Unemployment Compensation; however, plaintiff never received benefits. He began his employment with Morse Shoe on April 28, 1986. When plaintiff was terminated by SCOA, he was making a salary of $50,200 per year. His starting salary with Morse Shoe was $65,000 per year, plus stock options, insurance and medical benefits, any reasonable moving expenses and closing costs for the purchase of real estate in the Boston area.

The severance pay plan in effect as of the time of plaintiff's layoff provides relevant part as follows:

It is the policy of the Company to pay severance allowance to any regular, full-time employee who has one (1) year or more of continuous service and who is permanently terminated or laid off by the Company due to lack of work.

This separation pay allowance will be in addition to any vacation pay to which the released employee may be entitled, but will be subject to the following conditions:

1. If an employee's job is eliminated due to lack of work, the employer will not receive a severance pay allowance if comparable employment is offered and refused. However, if the suitable employment requires relocation, involving moving the family and/or household goods, the employee may refuse and still receive the severance pay allowance.

2. An employee who continues in the employ of the Company cannot receive severance pay allowance.

3. Employees who retire, resign voluntarily, are released for poor job performance or for violation of Company policy are not eligible for severance allowance.

Under the schedule for severance pay, plaintiff alleges that he would receive eight weeks base pay as an exempt employee of nine years service, in the amount of $9,665.40.

Evidence has been presented that the purpose of this plan is to assist employees financially during a period of unemployment. The affidavits of Joseph O'Riordan, Ben Stevens (a former administrator of SCOA's severance pay plan), and David Mullaney (former Director of Human Resources at SCOA) reveal that on prior occasions, the plan has been interpreted to mean that if an employee accepts employment at a comparable or better salary with a successor employer, that employee was deemed to continue "in the employ of the Company" within the meaning of the plan terms. However, if relocation was involved, the relocation proviso in the plan continued to apply. An employer was considered a successor employer if the company assumed some of SCOA's leases of shoe departments in department stores.

Defendant offers several examples of the past application of this policy. In 1979, SCOA's leases of shoe departments in Woolco Department Stores were assumed by Stylco, which made offers to most SCOA employees in those departments. Every employee who accepted employed with Stylco was denied severance pay. In 1984, SCOA's leases in Murphy Mart stores were assumed by Morse Shoe Company, which made offers of employment to most of the department employees. Any employee who accepted employment with Morse Shoe was denied severance pay. In 1985, SCOA's leases of Designer Depot shoe departments were assumed by Butler Shoe, and nearly all employees accepted employment with Butler. Each employee who accepted employment with Butler was denied severance pay.

As a result of the purchases of SCOA by the Hills Store Company, Morse Shoe Company assumed the leases in approximately one hundred and thirty Hills Department stores. More than half of the SCOA employees in those departments accepted employment with Morse Shoe Company. Any SCOA employee who was not offered employment or who declined an offer involving relocation was paid severance pay. Any employee who was known by SCOA to accept employment with Morse Shoe was denied severance pay. Severance pay was given to Raymond Kurpe, a SCOA employee who accepted a job with Morse Shoe. However, SCOA was unaware of the offer at that time, and later filed suit against Mr. Kurpe to recover the severance benefits. Employees who accepted employment with Volume Shoe Corp. and Tishkoff Enterprises, the other companies who assumed SCOA leases, were likewise not awarded severance pay.

Looking to the language of the plan itself, the plan excludes from benefit eligibility those situations involving voluntary terminations, continued employment with SCOA, and circumstances other than relocation where the employee refuses a comparable job offer. The language of the plan indicates that it was intended to provide an unemployment benefit rather than simply a bonus upon termination. It is reasonable to conclude, both from the terms of the plan and the past practice of SCOA, which provides some indication of the intent of SCOA, that the plan was not intended to compensate those employees who could have continued to be employed at a comparable job but declined such employment, or those who continued to work for SCOA or for a company which assumed the functions of SCOA businesses. Plaintiff has offered no evidence that he, as an employee, negotiated or contracted with SCOA for some other type of coverage under the plan.

Such an interpretation of the plan is apparently a common one throughout industry, since there are many cases which have addressed the construction of similar plans in the context of ERISA. *See, e.g., Holland v. Burlington Industries, Inc.*, 772 F.2d 1140 (4th Cir.1985); *Adcock v. Firestone Tire & Rubber Co., supra; Accardi v. Control Data Corp.*, 836 F.2d 126 (2d Cir.1987); *Anderson v. Ciba–Geigy Corp.*, 759 F.2d 1518 (11th Cir.1985). In *Aquin v. Bendix Corp.*, 637 F.Supp. 657 (E.D.Mich. 1986), the court upheld the denial of benefits on the ground that the employee accepted employment with the successor company even though there was no express language in the plan precluding benefits in that situation. Courts have noted that the policy behind such plans is generally to aid employees through a period of unemployment due to layoff, during which the employee is without income. *See, e.g., Aquin v. Bendix Corp.*, 637 F.Supp. at 662.

The court concludes that it is reasonable and consistent with the plan terms and the intent of SCOA, the author of the plan, as evidenced by past practices and the statements of SCOA officers and plan administrators, to deny benefits to employees who accept employment with successor employers.

Plaintiff contends that this interpretation does not apply to his case, since the position he filled at Morse Shoe was a vacancy created by the retirement of a Morse Shoe employee, rather than a position created by Morse's takeover of the SCOA leases of shoe departments. Plaintiff indicates that

his situation was different from that of the field employees who continued working in the shoe departments after Morse took over. However, the evidence also indicates that the dissolution of SCOA's Retail Footwear Division was the first instance in which corporate office or management level employees were implicated in a massive layoff situation. It is undisputed that Morse Shoe Company took over approximately one hundred and thirty of SCOA's leases in Hills Department Stores, and that a majority of the employees in those departments accepted jobs with Morse Shoe. Some corporate office employees also accepted positions with Morse. Plaintiff testified in his deposition that Morse Shoe interviewed him for the director of distribution position because of plaintiff's background as distribution center manager with SCOA. (Plaintiff's Depo., p. 36). Plaintiff further testified that as director of distribution at Morse Shoe, his job responsibilities included supervising "all of Morse Shoe's warehouses, the distribution centers", as well as "any distribution activity that is leased or purchased." (Plaintiff's Depo., p. 62). From this job description, it would be reasonable to conclude that plaintiff's duties in distribution would eventually impact on the operation of Morse's new Hills departments. But even disregarding this inference and accepting as true the evidence offered by plaintiff, the court finds, for purposes of the interpretation of the SCOA plan terms as applied to plaintiff, that Morse Shoe meets the requirements for being a successor employer, and that plaintiff's new employment was comparable.

Plaintiff contends that he should receive severance payments because he had not made a final decision to accept the Morse Shoe offer at the time he was laid off. The evidence reveals that plaintiff accepted the offer of employment on April 9, 1986, prior to his layoff, contingent upon his wife accepting the idea and the housing possibilities in the Boston area. This contingency was apparently satisfied, because plaintiff began his employment with Morse in Boston on April 28, 1989. At no time was plaintiff without income, since he received two weeks vacation pay after he was laid off. If plaintiff had decided in the end not to accept the offer, he would have been awarded severance pay because his case would have fallen within the relocation exception.

The language of the plan itself speaks in terms of employment "offered". The court finds that it would be inconsistent with the purpose of the plan, *i.e.* the furnishing of unemployment benefits, to construe the plan to require payments when an offer of employment has been made to an employee, particularly where the offer has been accepted, albeit with conditions. To hold otherwise would encourage employees to delay a definite decision on the offer or to put off their starting date with the new employer, and to take what would amount to a paid vacation on their severance benefits. If severance benefits must be paid prior to the acceptance or rejection of an offer of comparable employment, SCOA would be placed in the position of having to file suit to recover benefits improperly paid.

Plaintiff has also submitted evidence of certain individuals he claims received severance payments despite the fact that it was "well known" that these people had offers of employment prior to their layoff. Defendant replies with the affidavit of Mr. Miller, who states that none of the individuals named in paragraph 18 of plaintiff's affidavit accepted a job with a successor employer. Plaintiff refers to two other individuals, William Bogle and Robert Freedman, who were terminated or resigned and who were paid twenty-four and twenty-six weeks severance pay respectively. However, the interrogatories on file indicate that these were settlements negotiated contractually between the parties. Such matters fall under the discretionary clause of the severance pay plan and are distinguishable from the layoff situation present here.

Plaintiff claims that the decision to deny him benefits was invalid because of various violations of ERISA on the part of SCOA in the administration of the severance pay plan. Defendant admits that a

summary plan description was not furnished to employees or filed with the Secretary of Labor, that no modifications of the plan were filed with the Secretary, and that no annual report was filed with the Secretary. Defendant also admits that the written plan instrument did not specifically designate named fiduciaries to manage the operation and administration of the plan or otherwise delegate responsibility for plan administration, nor did the plan specify procedures for amending the plan. Defendant further acknowledges that it did not maintain a claims procedure, provide written notice of denial of benefits, or furnish its employees with a statement of their rights under ERISA.

However, plaintiff has produced no evidence to show how any of these technical violations of ERISA resulted in prejudice to him. While the court in *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1985) found the employer's ERISA violations mandated a finding that the denial of benefits was arbitrary and capricious, it has been noted that even that case requires violations which are wholesale and flagrant. *Coleman v. General Electric Co.*, 643 F.Supp. 1229, 1241 (E.D.Tenn.1986). In the absence of reliance or prejudice to the claimant, only the Secretary of Labor has standing to complain about violations of ERISA's procedural requirements. *Aquin v. Bendix Corp.*, 637 F.Supp. at 665.

The evidence in the record demonstrates that a written document outlining the severance pay plan was included in a policy notebook to which plaintiff had access. Robert Cope, formerly associate director of employee relations and compensation with SCOA, testified in his deposition that the severance pay plan was not a secret policy and was available for employees to look at. Memorandas issued upon the sale of leases to other companies included a discussion of severance benefits. The evidence also indicates that plaintiff discussed the denial of severance benefits with Mr. O'Riordan and Mr. Miller, and sent a letter to Herbert Goldberger of Hills Department Stores expressing his claim. He thereafter took legal action to assert a claim for benefits. There has been no showing that he was prejudiced by the ERISA procedural violations acknowledged by defendant.

The court finds upon *de novo* review of the plan terms and the intent of the parties, that plaintiff does not qualify for severance benefits under the SCOA plan, and that the evidence presented by plaintiff does not present a genuine issue of material fact in that regard. Defendant is entitled to summary judgment on Count 2 of the complaint.

■ In Count 3, plaintiff claims that he is entitled to a declaratory judgment stating that in the event he is laid off by Morse Shoe Company, he would be entitled to severance benefits under SCOA's severance pay plan. Plaintiff relies on *Livernois v. Warner–Lambert Co.*, 723 F.2d 1148 (4th Cir.1983). However, the Sixth Circuit gave some indication in *Adcock*, 822 F.2d at 627, n. 13, that it would decline to follow *Livernois.* The Sixth Circuit held in *In re White Farm Equipment Co.*, 788 F.2d 1186 (6th Cir.1986) that employee welfare benefit plans are not subject to the vesting requirements of ERISA, and that an employee's vested right to such benefits is a matter of contract. In *Dougherty v. Chrysler Motors Corp.*, 840 F.2d 2, 3 (6th Cir.1988) the court noted that "the sale of a business or portion of a business does not impose a fiduciary duty on an employer to guarantee future, nonvested, benefits."

There is no evidence that Morse Shoe contractually agreed to adopt or guarantee any obligations under SCOA's severance pay plan. There is also no language in the plan from which it could reasonably be inferred that SCOA agreed to pay severance benefits in the event of a layoff by a successor employer. The plan language indicates an agreement to pay severance benefits to "any regular, full-time employee." After layoff by SCOA, plaintiff was no longer a regular, full-time employee of SCOA. Practical aspects also militate against the construction of the plan terms urged by plaintiff. In this case, the entire Retail Footwear Division which sponsored the severance allowance policy was abolished. There is no indication that SCOA

nonetheless intended for its liability under the severance pay plan to continue indefinitely into the future. There is also no indication that SCOA intended to be liable for severance payments in situations where the successor employer, not SCOA, makes the decision to terminate the employee based upon factors completely beyond SCOA's control.

The court finds no evidence in the record which would support a finding that defendant intended to be contractually bound under its severance pay plan to pay severance benefits upon the layoff or termination of former SCOA employees by successor employers. Defendants are entitled to summary judgment as to Count 3.

■ In Count 4, plaintiff asserts a claim for interference with his employment relationship with Morse Shoe. Plaintiff alleges that defendant contacted Morse Shoe Company and asked Morse Shoe to request plaintiff to dismiss the complaint he had filed against SCOA to recover severance benefits. Plaintiff alleges in his amended complaint that he was told by his supervisor at Morse Shoe that if he did not drop his claim, his employment at Morse Shoe would be jeopardized. Plaintiff contended that defendant had a business relationship with Morse Shoe which Morse would wish to protect. Plaintiff bases this claim on common law.

Defendant argues that this claim is preempted by 29 U.S.C. § 1140 of ERISA. Defendant argues in the alternative that even if the claim is not preempted by ERISA, plaintiff has failed to produce evidence sufficient to establish tortious interference with an employment relationship under Massachusetts law. This court does not reach the preemption question because the court agrees, regardless of the basis of that action, that plaintiff has failed to produce evidence sufficient to create a genuine issue of material fact as to this claim.

Plaintiff stated in his deposition that he was told by Dick Bowen, his supervisor at Morse Shoe, that plaintiff should consider dropping his suit because Hills was pressuring some people at Morse, and that if plaintiff did not drop the suit, there might be repercussions. Mr. Bowen did not identify by name the individual from Hills who made the statements. Mr. Bowen said that Mr. Messina would call plaintiff to talk to him about the situation. However, plaintiff further testified that Mr. Messina never talked to him about dropping the suit. Plaintiff stated in his later affidavit that his supervisor also told him that the upper management was concerned about the effect the suit might have on Morse's leases in Hills Stores. Plaintiff has not presented an affidavit or deposition from Mr. Bowen. The conversations related in plaintiff's own deposition and affidavit are hearsay.

Mr. Miller testified in his deposition that he did not request that anyone at Morse talk to plaintiff about dropping his suit. Mr. Miller also stated that he told Mr. Messina that plaintiff's suit would have no effect on the relationship between Hills and Morse. Mr. Messina stated in his affidavit that he discussed the suit with Mr. Miller and that it was agreed that the suit would not affect the business relationship between Hills and Morse Shoe or plaintiff's employment relationship with Morse. Mr. Messina further stated that Mr. Miller did not request that Mr. Messina ask plaintiff to drop his suit, and Mr. Messina did not ask plaintiff to drop his suit, nor did he instruct any employee of Morse Shoe to ask plaintiff to do so. Mr. Messina indicated that during his two years of employment with Morse Shoe, plaintiff had received consistently favorable performance evaluations and had received merit increases in salary.

Plaintiff has introduced no competent evidence that SCOA or any agent of SCOA contacted Morse Shoe in an effort to request or pressure plaintiff into dropping his suit. No genuine issue of material fact has been demonstrated as to this claim, and defendant is entitled to summary judgment on Count 4.

■ Plaintiff's claim in Count 5 is advanced under 29 U.S.C. § 1140. That section provides in relevant part:

It shall be unlawful for any person to ... discriminate against a participant or ben-

eficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ...

Plaintiff claims that he was the only employee whose layoff date was extended for two weeks and who was kept on the payroll pending his receipt of an offer from Morse Shoe Company.

Section 1140 was designed primarily to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980). Plaintiff must prove that the employer was at least in part motivated by the specific intent to engage in activity prohibited by § 1140. *Gavalik v. Continental Can Co.*, 812 F.2d 834 (3rd Cir.1987). Plaintiff must show more than the incidental loss of benefits as a mere consequence of, rather than the motivating factor behind, an employment action. *Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983 (S.D.N.Y.1982); *Baker v. Kaiser Aluminum & Chem. Corp.*, 608 F.Supp. 1315 (N.D.Cal.1984).

In considering a claim of discrimination under § 1140, some courts have applied the burden of proof analysis adopted by the Supreme Court for use in Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir.1988). Plaintiff has shown that he was within a class of employees who might potentially be eligible for severance benefits under the plan. Plaintiff's case from that point is somewhat unique. Unlike most cases in which the beneficiary complains that he was terminated prior to the vesting of his pension benefits, plaintiff's claim is that defendant kept him on the payroll two weeks longer pending his receipt of an employment offer which rendered him ineligible for an unvested severance pay benefit. The court does not agree that keeping plaintiff on the payroll for an additional two weeks, even though he had few or no duties left to perform, was an adverse employment action. The court does not see why an employer could not satisfy the unemployment needs of employees scheduled for layoff by simply delaying their termination and keeping them on the payroll until they receive an offer of employment rather than terminating them immediately, thereby triggering the operation of the severance plan.

Even assuming that plaintiff has made a prima facie case of discrimination under § 1140, defendant has offered a nondiscriminatory motive for the employment action in question. Mr. Miller and Mr. O'Riordan testified in their depositions that they were concerned about plaintiff, at age fifty-three, being able to find another job. They felt it would be easier for plaintiff to find another job if he was still employed, and they hoped to be able to exert whatever influence they had with Morse Shoe to encourage Morse to make an offer to plaintiff.

Plaintiff alleges that this motive was pretextual, and that the true motive for delaying his layoff was to deprive him of severance benefits. Plaintiff notes that he was the only employee whose layoff was delayed. However, this fact lends credence to defendant's proffered reasons. If Mr. Miller was really concerned, as an investor in the purchase of SCOA, with minimizing severance payments, it would have been more logical for him to delay the termination of other employees as well. Plaintiff has offered no evidence to explain why he was selected to be the sole object of this alleged discrimination. The amount of benefits plaintiff would have received was not significant when compared with the prior instances of twenty-four and twenty-six weeks severance pay being awarded as the result of contractual settlements. Defendant's position that plaintiff would have been awarded severance benefits if he had declined the offer from Morse Shoe also negates any inference of pretext.

Plaintiff has offered no evidence which would support a reasonable inference that defendant's actions were motivated by a specific intent to prevent plaintiff from receiving severance benefits, nor has he presented evidence sufficient to create a

genuine issue of material fact on the matter of pretext. Defendant is entitled to summary judgment on Count 5.

In accordance with the foregoing, defendant's motion for summary judgment is granted. The clerk shall enter judgment for defendant.