Norman ADAMS, et al., Plaintiffs,

v.

AVONDALE INDUSTRIES, INC., et al., Defendants.

No. C–1–88–0214.

United States District Court, S.D. Ohio.

May 22, 1989.

---

David Mann, Cincinnati, Ohio, for plaintiffs.

James Rydzel, Cleveland, Ohio, for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on cross-motions for summary judgment. In accordance with Federal Rule of Civil Procedure 52, the Court does hereby set forth its Findings of Fact, Opinion, and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiffs are former salaried employees of the Ortner Freight Car Division (Ortner) of defendant Avondale Industries, Inc. (Avondale) located in Mt. Orab, Ohio. All plaintiffs are residents of either Kentucky or Ohio. Defendants Avondale and Connell Limited Partnership (Connell) are citizens of states other than Ohio and Kentucky.

2. Pursuant to a sale agreement executed on November 19, 1986 and effective January 16, 1987, Avondale sold the assets of Ortner to Trinity Industries, Inc. (Trinity), an unrelated entity. Trinity did not assume any liabilities of Avondale in the sale. Since the sale, Trinity has operated the Mt. Orab facility.

3. Subsequent to the sale, Avondale sold many of its assets to defendant Connell.

4. Effective January 16, 1987, plaintiffs' employment with Avondale ceased. Plaintiffs were hired by Trinity and began work for that corporation on January 19, 1987.

5. Trinity decided separately as to each plaintiff whether to extend an offer of employment. Trinity was under no contractual obligation to hire any Avondale employees. Some of the plaintiffs hired by Trinity were given different job responsibilities, titles, and levels of compensation than they had at Avondale.

6. Since at least September, 1985, Avondale had an unwritten severance pay policy for salaried employees of Ortner. This policy was in effect at the time Avondale sold its assets to Trinity. Severance benefits were paid out of Avondale's general assets.

7. Under the terms of the severance plan, eligible employees were entitled to one week of current salary for each year of service with Ortner. The employees were entitled to a minimum of two weeks salary and a maximum of eight weeks salary. Eligible employees were those involuntarily terminated from Avondale's employ. Employees who resigned, retired, or were terminated for gross misconduct were not eligible for severance benefits.

8. Payment of benefits under the unwritten severance pay policy was not conditioned on whether the terminated employee found employment with another company or remained unemployed.

9. Prior to the sale of Avondale's assets to Trinity, the Ortner severance pay policy did not address the issue of eligibility for severance benefits in the event of a sale of assets.

10. Some time subsequent to the execution of the sale agreement and prior to the closing date, Avondale adopted a "Limited Severance Plan". The plan provided that all salaried employees of Ortner who accepted positions with Trinity were ineligible for severance benefits. Ortner employees who were offered, but did not accept, employment with Trinity received severance pay from Avondale. A period of unemployment after termination was not a precondition to the receipt of severance benefits.

11. Less than two weeks prior to the closing date, the Limited Severance Plan was reduced to writing and distributed to some, but not all, Ortner employees.

12. Trinity does not have a severance pay policy for its employees. Nine former Ortner employees initially hired by Trinity who have since been terminated from service with Trinity have received no severance pay.

13. Avondale's vacation pay policy for salaried Ortner employees provided that, "An employee earns vacation over the course of the calendar year ... As of January 1 immediately following such calendar year, the employee becomes entitled to and vested in the vacation which had been earned in the previous year."

14. The vacation pay policy further provided that "An employee whose employment is terminated for any reason shall receive vacation pay not yet received if eligible for such vacation pay under the provisions of this Article."

15. The Limited Severance Plan stated that employees would receive vacation pay which they earned by working in 1986 in accordance with the company vacation plan in effect on January 1, 1986. Avondale originally intended to abide by this provision of the Limited Severance Plan. However, it determined not to pay plaintiffs for unused, accrued vacation time when it learned that Trinity intended to credit plaintiffs for their years of service at Ortner in calculating vacation benefits.

16. The vacation pay plaintiffs received from Trinity in 1987, with two exceptions, equalled or exceeded the dollar amount of vacation accrued by plaintiffs at Ortner in 1986.

17. Under Trinity's vacation policy, vacation benefits for the calendar year vest on June 1 of that year. An employee is entitled to take his vacation in the year in which it is earned. If an employee leaves Trinity in the first five months of a calendar year, he is not entitled to vacation benefits for that year. If an employee is terminated after June 1, he is paid for unused vacation accrued in that calendar year.

## CLAIMS OF THE PARTIES

Plaintiffs allege that they are entitled to severance benefits under the unwritten severance pay policy in effect before the Ortner sale. Plaintiffs contend that Avon-

dale was not entitled to alter its severance pay policy on the eve of the Ortner sale so as to avoid their obligations under the unwritten policy. Plaintiffs further claim that they are entitled to receive vacation pay for the years 1986 and early 1987.

Defendants claim that the Limited Severance Plan is the only plan of any relevance to this case. They claim that the plan is a valid modification of Avondale's unwritten severance pay policy. In the alternative, defendants contend that Avondale's refusal to pay benefits under the Limited Severance Plan must be upheld as a valid interpretation of the unwritten severance pay plan. Finally, defendants allege that plaintiffs' claims for vacation pay must fail because plaintiffs have received all vacation benefits to which they are entitled.

## OPINION

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions and affidavits do not raise a genuine issue of material fact for trial. Federal Rule of Civil Procedure 56(c), *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original.)

## I. SEVERANCE PAY

■ Title 29 U.S.C. § 1132(a)(1)(B) empowers a participant or beneficiary to bring a civil action

> to recover benefits due him under terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

As a general rule, a de novo standard of review applies to a denial of employee benefits challenged under § 1132(a)(1)(B).

*Firestone Rubber Co., et al. v. Bruch, et al.*, — U.S. —, 109 S.Ct. 948, 103 L.Ed. 2d 80 (1989). However, a deferential standard of review is appropriate when the ERISA plan expressly gives the plan administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the plan's terms. *Id.*

There is no evidence that the unwritten severance plan to which the parties have stipulated or the Limited Severance Plan vested the plan administrator or fiduciary with discretionary authority.[1] Thus, a de novo standard of review applies in determining whether defendants violated § 1132(a)(1)(B) by denying plaintiffs severance benefits. The Court must ascertain the terms of the plan in light of all the circumstances and evidence disclosing the parties' intent. *Id.* The Court must then determine whether the decision to deny benefits is consistent with the terms and purpose of the plan.

Under the express terms of the Limited Severance Plan, plaintiffs were excluded from receiving severance pay upon the Ortner Sale since they accepted offers of employment with Trinity. However, this does not end the Court's inquiry. In determining whether plaintiffs are entitled to severance pay, the Court must consider (1) whether the Limited Severance Plan was an amendment of the unwritten severance policy, which policy Avondale was entitled to unilaterally modify, and (2) if not, whether the denial of severance pay to plaintiffs is based on a valid interpretation of the unwritten severance policy.

■ An employer does not act as a fiduciary when he decides to establish, amend or terminate a benefit plan. *Musto v. American General Corp.*, 861 F.2d 897 (6th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154 (6th Cir.1988). Nonetheless, the United States Court of Appeals for the Sixth Circuit has acknowledged that Congress has not expressly endorsed "unfet-

---

1. The Court has previously determined that Avondale's severance pay policy is an "employee welfare benefit plan" as defined under ERISA (Doc. No. 13).

tered unilateral termination of welfare benefit plans." *In re White Farm Equipment,* 788 F.2d 1186, 1192 (6th Cir.1986). Thus, the ruling in *Musto* does not necessarily compel the conclusion urged by defendants, which is that an employer is free to amend or terminate a benefit plan under any circumstances irrespective of its employees' welfare.

However, the Court need not ascertain under what circumstances amendment or termination of a benefit plan is proper. Assuming, *arguendo,* that defendants acted improperly in amending or terminating the unwritten severance policy on the eve of the Ortner sale, the Limited Severance Plan withstands judicial scrutiny as a valid interpretation of the unwritten severance plan.

■ Numerous cases have addressed the issue of denial of severance pay in the event of a sale of a company or one or more of its divisions. In determining whether denial of severance pay is valid in such a context, the Court must examine the particular facts of the case before it. A key factor to consider is consistency; i.e., has the employer followed the same approach in similar. situations. *Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623 (6th Cir.1987); See *Blakeman v. Mead Containers,* 779 F.2d 1146, 1151 (6th Cir. 1985).

A second interrelated factor is the employer's purpose in granting severance pay. *Adcock,* 822 F.2d at 626. Severance pay is generally intended to provide an employee with income between jobs and should be considered more an unemployment benefit. *Id.* at 626-27. However, there may be instances where an employer has not intended that unemployment be a prerequisite to the receipt of severance pay. *Id.* Instead, an employer may grant severance pay as a reward for past service. See *Bennett v. Gill and Duffus Chemicals, Inc.,* 699 F.Supp. 454, 459-60 (S.D.N.Y. 1988). The employer's intent in a given case may be disclosed in the terms of the

plan or may be evident from the employer's past practice. *Adcock,* 822 F.2d at 626-27.

■ The remaining factors that the Court should examine are (1) whether the severance plan vested the administrator with flexibility or discretion to apply it in particular cases; *Blakeman,* 779 F.2d at 1151; (2) the nature of the sale, e.g., whether the company or division was sold as an ongoing concern[2]; and (3) the extent to which the employer has complied with ERISA's procedural requirements. *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1353 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). Also, the Court should closely scrutinize an employer's interpretation of a benefit plan when the employer has avoided a large outlay as a result of its decision. *Garavuso v. Shoe Corps. of America Industries, Inc.,* 709 F.Supp. 1423 (S.D.Ohio 1989) (Graham, J.) (*citing Jung v. FMC Corp.,* 755 F.2d 708, 710 (9th Cir.1985)).

■ In this case, Avondale drafted the Limited Severance Plan after calculating the cost of providing severance benefits to its employees. By denying severance pay to plaintiffs, Avondale avoided an outlay of approximately $170,000 to $180,000. Although this does not necessarily indicate that Avondale acted improperly, the circumstances compel the Court to closely scrutinize Avondale's decision.

Upon review of the undisputed facts, the Court finds that the denial of severance pay to employees who accepted employment with Trinity was not inconsistent with Avondale's past practice and history. Avondale did not have an occasion prior to the Ortner sale to apply the unwritten severance plan in a situation involving a sale of assets. Avondale had not previously sold a division to an unrelated entity during the time the unwritten severance plan was in effect. Thus the Ortner sale presented Avondale with its first opportunity to construe the severance plan in such a context. The Court must therefore look to the remaining factors to ascertain whether Avon-

**2.** A company is sold as an "ongoing concern" when there is an agreement that all employees of the seller will be employed by the purchaser. *Adcock,* 822 F.2d at 624 n. 2.

dale's decision to deny severance pay to plaintiffs was valid.

With respect to the purpose of severance pay under the Ortner policy, the plan itself contains no express language stating what function Avondale intended severance pay to serve. Plaintiffs point to surrounding circumstances that allegedly evidence an intent on the part of Avondale that severance pay serve primarily as a reward for past service. First, plaintiffs assert that Avondale never conditioned the receipt of severance benefits on continued unemployment following termination. However, this does not suggest that Avondale intended that severance pay function as a reward for past service. The fact that unemployment was not a prerequisite to the receipt of severance benefits can be equally attributed to Avondale's desire to avoid monitoring a former employee's employment status following termination. See *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1149 (4th Cir.1985), *cert. denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986).

Second, plaintiffs contend that Avondale's actions during an "unusual business downturn" in 1986 demonstrate that severance pay functioned as a reward for past service. During that period, in anticipation of lay-offs, Avondale decided to delay paying severance benefits to employees until after they had been laid off for one year. Plaintiffs allege that if severance pay was intended as an economic measure, employees should have been paid severance benefits during the year in which they were unemployed, at which time they had the greatest need for such benefits. The Court disagrees with plaintiffs' analysis. Avondale's decision to delay severance pay to laid-off employees for one year is supported by a valid business rationale; that is, the company deemed it prudent to withhold severance pay until it was certain that laid-off employees would not be recalled. Avondale's special treatment of this situation does not bolster plaintiffs' argument.

Finally, plaintiffs point to the fact that the severance plan tied the amount of severance pay to an employees' years of service with the company. Defendants concede that tying the amount of benefits to length of employment is a way of rewarding long-term employees for their years of service with the company. Nonetheless, the plain terms of the plan demonstrate that Avondale did not intend severance pay to function primarily as a reward for past service. Under the plan, only those employees who were "involuntarily terminated" were entitled to severance pay. If severance pay were intended as a reward, it is inconceivable that Avondale would deny such benefits to those employees who resigned, retired or otherwise voluntarily chose to leave Avondale after serving the company faithfully for any number of years and choose to "reward" only those employees forced to leave the company.

In the absence of colorable evidence that Avondale intended severance pay to serve primarily as a reward for past service, and in view of the fact that severance pay was limited to involuntarily terminated employees, the general rule set forth in *Adcock* applies to this case. Accordingly, severance pay under the Ortner policy must be considered an economic measure intended to bridge the gap for a terminated employee between jobs.

As indicated above, the severance plan did not vest the plan administrator with the flexibility or discretion to apply the plan in individual cases. Any "involuntarily terminated" employee was entitled to benefits. In the context of the Ortner Sale, Avondale interpreted the plan to mean that those employees who accepted employment with Trinity were not involuntarily terminated. This interpretation is consistent with the purpose, history and terms of the plan, primarily because plaintiffs did not suffer the hardships normally associated with an involuntary termination from employment as a result of the Ortner sale. It is true that Trinity's fringe benefits are not as valuable as those of Avondale as demonstrated by the comparison of benefits plaintiffs have offered. However, plaintiffs did not lose a day of work as a result of the sale; all but two of the forty plaintiffs were apparently hired by Trinity at the same salaries they received at Avondale

(see plaintiffs' proposed findings of fact); and the majority of plaintiffs retained their same jobs. Moreover, although Ortner was not sold to Trinity as an ongoing concern, Trinity continued to operate the Mt. Orab facility, so that plaintiffs remained working at the same location. Trinity also offered plaintiffs continuity in their employment in that it credited them with years of service at Ortner for purposes of vacation, sick pay, medical coverage and life insurance.

Further, defendants knew that plaintiffs would not suffer the hardships normally associated with an involuntary termination. Defendants' knowledge distinguishes the Ortner sale from the typical involuntary termination where the employer does not know whether an employee will be immediately hired by an unrelated entity. Under these circumstances, Avondale's decision not to pay termination benefits to plaintiffs is a valid interpretation of the unwritten severance plan. See *Holland*, 772 F.2d at 1140; *Aquin v. Bendix Corp.*, 637 F.Supp. 657 (E.D.Mich.1986); *Douglas v. The Bendix Corp.*, 837 F.2d 475 (6th Cir.1988) (unpublished opinion).[3]

■ An issue remains as to what effect defendants' procedural violations of ERISA have upon the outcome of this case. It is undisputed that Avondale failed to comply with ERISA's requirements that the administrator file an annual report (29 U.S.C. § 1021(b)(4)); distribute a summary plan description to employees (29 U.S.C. § 1021(a)(1)); and reduce the plan to writing. (29 U.S.C. § 1102(a)(1)).

Ordinarily, only the United States Secretary of Labor has standing to complain about violations of ERISA's procedural requirements. *Aquin*, 637 F.Supp. at 665; *Garavuso*, 709 F.Supp. at 1429–30. An exception applies when the procedural violations are wholesale and flagrant (*Garavuso*, 709 F.Supp. at 1429–30 (citing *Coleman v. General Electric Co.*, 643 F.Supp. 1229, 1241 (E.D.Tenn.1986)) such that the decision to deny benefits is made in the course of and infected by such violations.

*Aquin*, 637 F.Supp. at 664. In order to have standing to complain about violations of ERISA's procedural requirements, plaintiffs must demonstrate reliance or prejudice resulting from such violations. *Id.* at 665; *Garavuso*, 709 F.Supp. at 1429–30.

The record does not establish that defendants' decision to deny severance pay to plaintiffs was made in the course of and infected by the procedural violations. Moreover, plaintiffs have not shown that they relied to their detriment on defendants' omissions or that they were prejudiced thereby. Plaintiffs do not claim that they were unaware of Avondale's unwritten severance policy. Similarly, although the Limited Severance Plan was not distributed to plaintiffs, they do not claim that they were unaware of its existence or of the fact that they would not receive severance pay if they accepted offers of employment with Trinity. Accordingly, plaintiffs have no standing to complain of defendants' procedural violations.

## II. VACATION PAY

■ In its order of October 14, 1988, the Court reserved ruling on whether plaintiffs' claims for vacation pay fall under ERISA or state law. Subsequent to the Court's order, the United States Supreme Court decided *Massachusetts v. Morash*, — U.S. —, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). *Morash* holds that a single employer's policy of paying employees cash from its general assets in lieu of unused vacation time does not constitute a "welfare benefit plan" under ERISA. The parties agree that Avondale paid employees cash out of its general assets for unused vacation time. Therefore, plaintiffs' claims for vacation benefits must be resolved under state law.

■ It is undisputed that plaintiffs provided services to Avondale in 1986 for which they earned vacation to be taken in 1987; that the sale agreement did not require Trinity to assume Avondale's vacation pay obligations or to formulate a com-

**3.** Although these cases were decided under the arbitrary and capricious standard of review, the reasoning of the Courts is nonetheless applicable to this case.

parable vacation plan; and that the Trinity vacation plan differs from Avondale's plan in the following respects. A Trinity employee is entitled to take vacation in the year during which he earns vacation time, but vacation benefits do not vest until June 1 of a calendar year. In contrast, Avondale employees were entitled to take vacation earned in a given year in the subsequent year and such benefits did not vest until January 1 of the subsequent year.

Plaintiffs concede that Trinity gave them credit for vacation time earned at Avondale in 1986 and early 1987. Nonetheless, they claim that Trinity's action does not relieve Avondale of its obligation to pay them cash for unused vacation time accrued at Ortner during this period. Plaintiffs further allege that if they leave Trinity prior to June 1 or any calendar year, they will lose a year of vacation benefits to which they would have been entitled had their employment with Avondale not terminated.[4]

The Court finds that plaintiffs are not entitled to the vacation pay they request from Avondale. To grant such relief would result in a windfall to plaintiffs. Plaintiffs do not dispute that they have received paid vacation from Trinity for service rendered to Ortner in 1986 and early 1987. The only injury they allege, which is potential loss of vacation pay if they leave Trinity before June 1 of any calendar year, is speculative. Because plaintiffs have failed to establish any damages resulting from Avondale's failure to pay them for unused accrued vacation time, defendants are entitled to summary judgment on plaintiffs' claims for vacation pay.

## CONCLUSIONS OF LAW

(1) A de novo standard of review applies to plaintiffs' claims for severance pay brought under 29 U.S.C. § 1132(a)(1)(B). *Firestone Rubber Co., et al. v. Bruch, et al.,* — U.S. —, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

(2) Defendants' decision to deny severance pay to plaintiffs is a valid interpretation of the unwritten severance pay policy and is consistent with the purpose and terms of the plan.

(3) Plaintiffs lack standing to claim violations of ERISA's procedural requirements by defendants since plaintiffs did not suffer any substantive harm as a result of such violations.

(4) Plaintiffs are not entitled to recover severance pay from defendants.

(5) Plaintiffs' claims for vacation pay do not fall under ERISA, but are governed by state law. *Massachusetts v. Morash,* — U.S. —, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989).

(6) The Court has diversity jurisdiction over some plaintiffs claims for vacation pay under 28 U.S.C. § 1332 and exercises its pendent jurisdiction over the remaining claims for vacation.

(7) Plaintiffs are not entitled to receive vacation pay from defendants since they have received the vacation benefits which they earned while employed at Ortner in 1986 and early 1987 and have therefore not sustained any damages.

IT IS SO ORDERED.

---

4. Plaintiffs allege that one unnamed plaintiff has lost a year of vacation benefits by leaving Trinity before June 1 of a calendar year.