UNITED PAPERWORKERS INTERNA-
TIONAL UNION, LOCAL 14, AFL–
CIO–CLC, et al., Plaintiffs,

v.

INTERNATIONAL PAPER COMPANY,
et al., Defendants.

Civ. No. 90–0003–B.

United States District Court,
D. Maine.

Nov. 12, 1991.

Jeffrey Neil Young, McTeague, Higbee, Libner, Madadam, Case & Watson, Topsham, Me., for plaintiffs.

S. Mason Pratt, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for defendants.

## OPINION AND ORDER ON STIPULATED RECORD

GENE CARTER, Chief Judge.

This case involves an action for severance pay for over one thousand striking members of Local 14 of the United Paperworkers International Union and Local 246 of the International Brotherhood of Firemen and Oilers (hereinafter "the Unions"). The action arises under the terms of the International Paper Company Androscoggin Mill Severance Benefit Plan (hereinafter "the Plan"), pursuant to a collective bargaining agreement between International Paper Company (hereinafter "IP" or "Defendant") and the Unions. The Plan is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) of the Employee Retirement Income Security Act, as amended (hereinafter "ERISA"), which is administered solely by Defendant. Revised Stipulated Facts (hereinafter "Stip."), ¶¶ 6–7.

Originally, three individual Plaintiffs had alleged under Count I of the Second Amended Complaint (hereinafter "the Complaint") that Defendant had violated the Plan but, subsequently, the parties settled these individual claims. *See* Defendants' Reply Memorandum on Submission on Stipulated Record and Cross Motions for Summary Judgment at 1. Thus, Count I has been dismissed.

Parties have submitted to the Court on a stipulated record the defense of failure to exhaust administrative remedies raised in response to Count II; Count III; Count IV; and the claim in Count V that a contract existed within the meaning of Section 301 of the Labor Management Relations Act (hereinafter "LMRA"), 29 U.S.C. § 185. The parties have also submitted the following claims in Count II and Count V that the group Plaintiffs are entitled to severance pay on cross motions for summary judgment in the event the Court reaches them after consideration of the aforementioned claims.

In support of their motions now pending on a stipulated record, the parties have filed a Revised Joint Exhibit List and Revised Stipulated Facts, both filed on March 11, 1991, and Stipulation on Submission of Case for Decision, filed March 20, 1991. The Court also has before it the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment (hereinafter "Plaintiffs' Memorandum"), and the Memorandum in Support of Defendants' Motion for Partial Summary Judgment (hereinafter "Defendants' Memorandum"), both filed on February 15, 1991.

For the reasons that follow, under Count II, the Court finds that Plaintiffs have failed to prove by a preponderance of the evidence that their failure to exhaust their administrative remedies under the 1984 Agreement and implemented offer was justified. The court dismisses Count II and will therefore not reach the cross motions for summary judgment.

With respect to Count III, the Court finds that Defendants failed to comply with the reporting and disclosure requirements of 29 U.S.C. § 1021(b) and failed to have a claims procedure that complied with the provisions of 29 U.S.C. § 1133 of ERISA and the applicable Code of Federal Regulations. In addressing the merits of Count III, the Court concludes, however, that Plaintiffs have failed to show significant reliance upon, or prejudice arising from, Defendants' violations of ERISA. Accordingly, the Court will dismiss Count III.

With respect to Counts IV and V, the Court will dismiss these claims because of Plaintiffs' failure to prove by a preponderance of the evidence that futility justified their failure to exhaust their administrative remedies under the 1984 Agreement or implemented offer.[1]

## I. *Background*

The Unions and IP have been parties to a series of collective bargaining agreements at the Androscoggin Mill from 1965 to June 16, 1987, which have set forth the terms and conditions of employment for members of the Unions working for IP in production and maintenance positions. Stip. ¶ 9. The most recent of these collectively-bargained agreements was effective from June 1, 1984 until June 16, 1987, after the Unions gave notice of their intent to terminate it. Stip. ¶¶ 10–11.

When IP and the Unions were unable to reach agreement upon a collective bargaining agreement to succeed the 1984 agreement, members of the Unions, including most of the Plaintiffs, commenced an economic strike on June 16, 1987, which lasted until October 9, 1988. Stip. ¶ 12. On June 22, 1987, before IP hired any replacement workers, it notified all Plaintiffs of the possibility it would do so. Stip. ¶ 51. Beginning on June 29, 1987, and continuing thereafter, IP hired replacement workers to perform the work formerly performed by striking members of the Unions. Stip. ¶ 13.

On October 13, 1987, IP notified the Unions it was implementing its final offer, which consisted of the terms of the 1984 Agreement, but not including the provisions of section 7 of the 1984 Agreement relating to final and binding arbitration.

---

**1.** Plaintiffs pled allegations regarding nonapplicability of the doctrine in their Complaint under Count IV. ¶ 65. Defendants denied these allegations in their Answer to this count. ¶ 65.

Although neither Plaintiffs nor Defendants pled the exhaustion doctrine regarding Count V in their Complaint and Answer, respectively, Defendants did rely on the doctrine in their Memorandum in Support of their Motion for Summary Judgment; "[b]ecause the group Plaintiffs did not exhaust their claims under the grievance procedure of either the implemented offer or the 1984 Agreement, Plaintiffs are not entitled to severance pay under Count[ ] ... V...." Defendants' Memorandum at 17. Al-

though Defendants failed to assert any supporting argument beyond the aforementioned statement regarding Count V, the Court decides *sua sponte* that, as applied to Count V, it must apply and uphold the exhaustion doctrine.

Similar to Counts II and IV, Count V alleges that Defendants refused "to pay severance pay to the individual Plaintiffs covered by the group severance pay grievance." ¶ 69. Hence, whether or not the unilateral implementation was an agreement within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because Plaintiffs failed to exhaust their administrative remedies regarding the group severance pay grievance, the legal status of the unilateral implementation is immaterial.

Stip. ¶ 14. Mill Rule 23 was the provision in the 1984 Agreement which governed the payment of severance pay. Stip. ¶ 15. It has been included in all production and maintenance collective bargaining agreements at the Androscoggin Mill since the Mill began operating in 1965. Stip. ¶ 16.

On August 12, 1987, the Unions requested that IP pay the strikers severance pay. IP denied this request, asserting that the strikers had not been laid off within the meaning of Mill Rule 23. Stip. ¶ 19. Section 7 of the 1984 Agreement contained the grievance and arbitration procedure for disputes arising under the Agreement, including disputes as to the payment of severance benefits under Mill Rule 23. Stip. ¶ 20.

The implemented offer has remained in effect since October 13, 1987, with no material changes. Stip. ¶ 21. A portion of the implemented offer eliminated one hundred seventy-eight production and maintenance positions represented by the Unions, including the layoff of the one hundred fifty-one most junior members of the Unions. Stip. ¶¶ 22–23. Pursuant to Mill Rule 23, IP paid severance pay to employees laid off as a result of the implemented offer.

At a negotiating session on November 13, 1987, at which the parties discussed the payment of severance pay to employees laid off as a result of the implemented offer, the Unions questioned why all the strikers would not be paid severance pay. IP asserted that strikers were not entitled to severance pay because the strike was "employee action," not "company action." Stip. ¶ 28. IP sent to all of the strikers a letter dated February 1, 1988, advising them, *inter alia*, that "strikers who have been permanently replaced are not eligible for severance pay." Stip. ¶ 58.

On October 9, 1988, Plaintiffs and the Unions ended the strike and made an unconditional offer to return to work at the Androscoggin Mill. Stip. ¶ 37. Upon the conclusion of the strike, IP elected to retain the replacement workers rather than immediately reinstate the former strikers who were Union members. IP agreed to recall and continues to recall former strikers, pursuant to a recall agreement between IP and the Unions, only as replacement workers have quit or been terminated or new positions were created. Stip. ¶ 38.

On December 8, 1988, the Unions filed a grievance requesting that IP pay severance benefits to all strikers who had not been recalled within six weeks of the end of the strike. Stip. ¶ 39. On January 18, 1989, the Unions requested that Defendants pay severance benefits to all strikers who had not been recalled since the end of the strike, and one-half severance benefits to all strikers who had been recalled between November 27, 1988 and January 9, 1989. Stip. ¶ 40.

On February 14, 1989, Defendants denied the Unions' grievance for severance pay on behalf of the group Plaintiffs. Stip. ¶ 41. The group Plaintiffs did not request a second or third step in the grievance procedure under section 7 of the 1984 Agreement. Stip. ¶¶ 42–43. The group Plaintiffs also did not request arbitration under Section 7 of the 1984 Agreement. Stip. ¶ 44. Additionally, the group Plaintiffs did not request a second or third step in the grievance procedure, or arbitration, under the implemented offer. Stip. ¶¶ 45–47.

On March 21, 1989, counsel for Plaintiffs filed with the National Labor Relations Board (hereinafter "NLRB") a charge against IP alleging that IP's refusal to pay any severance benefits to the group Plaintiffs constituted an unfair labor practice. Stip. ¶ 48. On May 2, 1989, the Regional Director of the NLRB refused to issue a complaint for an unfair labor practice against IP. Stip. ¶ 50.

Following the NLRB's action, the Unions filed the instant suit on January 3, 1990.

## II. *Count II*

The parties stipulate that the Plaintiffs did not exhaust their administrative remedies before filing their suit in this Court. Stip., ¶¶ 41–47.[2] Plaintiffs allege under

---

2. The Revised Stipulated Facts state that Plaintiffs did not request a second or third step under

either Section 7 of the 1984 Agreement or the implemented offer. ¶¶ 42–43, 45–46. More-

Count II that they are excused from exhausting these remedies under ERISA because of futility and denial of meaningful access to such remedies. Complaint ¶ 55.[3] For the reasons that follow, the Court finds that Plaintiffs have failed to prove by a preponderance of the evidence that their failure to exhaust their administrative remedies was justified, based either on futility or denial of meaningful access.

Although ERISA does not by its terms mandate exhaustion of administrative remedies prior to instituting suits for denial of benefits under the Act, courts have uniformly applied the exhaustion doctrine [4] to such suits.[5] *See, e.g., Springer v. Wal-Mart Associates' Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3d Cir.1990); *Makar v. Health Care Corp. of Mid-Atlantic,* 872 F.2d 80, 82–83 (4th Cir.1989); *Drinkwater v. Metropolitan Life Insurance Co.,* 846 F.2d 821, 826 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Zipf v. American Telephone and Telegraph Co.,* 799 F.2d 889, 892 (3d Cir.1986); *Denton v. First National Bank of Waco, Texas,* 765 F.2d 1295, 1300 (5th Cir.1985); *Kross v. Western Electric Co.,* 701 F.2d 1238, 1245 (7th Cir.1983); *Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980).[6]

Courts have similarly required litigants to exhaust grievance procedures available under their collective bargaining agreements before suing in federal court for denial of benefits under ERISA. *See, e.g., Meza v. General Battery Corp.,* 908 F.2d

---

over, the Plaintiffs did not request arbitration under either Section 7 of the 1984 Agreement or the implemented offer. ¶¶ 44, 47.

3. Plaintiffs allege that:
[T]he Defendant Severance Plan and Defendant IP failed to provide the individual Plaintiffs covered by the group severance pay grievance with a copy of the Defendant Severance Plan, a summary plan description, or otherwise make the individual Plaintiffs covered by the group severance pay grievance aware of the administrative remedies they may have had under the Defendant Severance Plan, thereby denying the individual Plaintiffs covered by the group severance pay grievance meaningful access to the administrative remedies to the extent any existed.
Complaint ¶ 55.

4. The case law surrounding the exhaustion doctrine is complex:
Exhaustion law is too complex for a meaningful simple statement of when exhaustion is required and when it is not, but clearly the courts generally do what they obviously should do—they weigh the reasons pulling in each direction and decide whether requiring exhaustion is desirable.... Pulling away from requirement of exhaustion are combinations of such factors as irreparable injury to a party from pursuing the administrative remedy, clear absence of agency jurisdiction, clear illegality of the agency's position, a dispositive question of law peculiarly within judicial competence, the futility of exhaustion, and expense and awkwardness of the administrative proceeding as compared with inexpensive and efficient judicial disposition of the controversy.
Pulling toward requirement of exhaustion are combinations of such factors as need for fac-

tual development, importance of reflecting agency's expertise or policy preferences in the final result, probability that the agency will satisfactorily resolve the controversy without judicial review, protection of agency processes from impairment by avoidable interruption, conservation of judicial energy by avoiding piecemeal or interlocutory review, and providing the agency opportunity to correct its own errors.
4 Davis, *Administrative Law Treatise,* § 26:1 at 414–15 (2d ed. 1983).

5. The court in *Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir.1983), noted several reasons for requiring exhaustion in ERISA suits:
Congress established administrative claim-resolution procedures to reduce the number of frivolous ERISA suits, promote consistent treatment of claims, provide for non-adversarial methods of settlement and minimize the cost of settlement of claims. Further, the requirement of exhaustion reduces the likelihood that early judicial intervention will impair trustees' abilities to manage pension funds with expertise and efficiency. Finally, allowing pension fund trustees to refine their actions will assist the courts when judicial review is finally invoked.
*Id.* at 1245.

6. The court in *Zipf* noted:
When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits.
799 F.2d at 892.

1262, 1279–80 (5th Cir.1990); *Giuffre v. Delta Air Lines, Inc.,* 746 F.Supp. 238, 240 (D.Mass.1990) (Harrington, D.J.); *Treadwell v. John Hancock Mutual Life Insurance Co.,* 666 F.Supp. 278, 284 (D.Mass. 1987) (Caffrey, D.J.); *King v. James River–Pepperell, Inc.,* 592 F.Supp. 54, 56, modified on other grounds, 593 F.Supp. 1344 (D.Mass.1984) (Caffrey, C.J.); *DeLisi v. United Parcel Service, Inc.,* 580 F.Supp. 1572, 1575 (W.D.Pa.1984); *Michota v. Anheuser–Busch, Inc.,* 526 F.Supp. 299, 321 (D.N.J.1980).

■ Courts have created limited exceptions to application of the exhaustion doctrine to ERISA suits where purposes underlying the doctrine are inapplicable. For example, the First Circuit has held that failure to exhaust administrative remedies will be excused "when resort to the administrative route is futile or the remedy inadequate." *Drinkwater,* 846 F.2d at 826.

Courts have generally found that, in the absence of futility, plaintiffs must exhaust administrative remedies available under existing collective bargaining agreements for ERISA claims.[7] *See, e.g., Tomczyscyn v. Teamsters, Local 115 Health & Welfare,* 590 F.Supp. 211, 216 (E.D.Pa.1984) ("The affidavit ... and the denial letter ... strongly suggest that the trustees would deny plaintiffs' claim on appeal. Nevertheless, I am not satisfied from the record now before me that the trustees' position has become so fixed that an appeal would serve

no purpose"); *Taylor v. Bakery and Confectionary Union and Industry International Welfare Fund,* 455 F.Supp. 816, 819, 820 (E.D.N.C.1978) ("Congress intended a claimant to exhaust his interfund remedies before seeking federal court review.... [Plaintiff] ... has not alleged any facts which indicate his recourse to the fund procedures would be futile"). *Cf. De Pina v. General Dynamics Corp.,* 674 F.Supp. 46, 51 (D.Mass.1987) (Young, D.J.) ("The futility exception is particularly appropriate where the past pattern of an agency or administrator as well as its position on the merits of the current matter in litigation reveal that any further administrative review would provide no relief.").

Here, Plaintiffs knew of and utilized the grievance procedure of the 1984 Agreement for their severance pay claims.[8] Although Defendants concede that no ERISA claims procedure existed independent of Mill Rule 23 and Section 7 of the 1984 Agreement, and the implemented offer, the Court cannot conclude that Plaintiffs' exhaustion of its administrative remedies under an accessible and utilized grievance procedure would have been futile. Plaintiffs have failed to prove by a preponderance of the evidence that exhaustion of administrative remedies would have been futile under the 1984 Agreement and implemented offer.

■ Courts have alternately characterized the other judicially-created exception

7. Courts have looked to the adequacy of ERISA plans in the absence of collective bargaining agreements to determine whether exhaustion of administrative remedies would have been futile. *See, e.g., Simmons v. Willcox,* 911 F.2d 1077, 1081 (5th Cir.1990) ("This allegation [of defendants withholding information regarding status of benefits] finds no support in the record, which instead demonstrates that the defendants were quite forthcoming and cooperative"); *Drinkwater,* 846 F.2d at 826 ("It is undisputed that Metropolitan's plan provided the required review procedure."); *Denton,* 765 F.2d at 1302 ("There was no question that Denton was fully aware of his appeal rights from his Plan description provided to him as required by ERISA"); *Amato,* 618 F.2d at 568 ("We see no inadequacy in the administrative appeal procedures available under the terms of the Pension Plan ... No claim is made that those procedures fail to comply ... with the terms of section 503 of ERISA

or with the regulations laid down in 29 C.F.R. § 2560.503–1").

Although Defendants fall far short of meeting the ERISA requirements that courts have identified in the aforementioned cases, Plaintiffs had access to and used the 1984 Agreement and implemented offer that provided a mechanism for grieving severance pay disputes.

8. In the absence of a grievance procedure in the 1984 Agreement or implemented offer, Plaintiffs would have lacked any claims procedure for their ERISA claims. The court in *Baker v. Universal Die Casting, Inc.,* 725 F.Supp. 416 (W.D.Ark.1989), found that exhaustion probably would have been futile where no plan claims procedure was available. *Id.* at 420. Similarly, this Court probably would have concluded that, but for the availability of grievance procedures under the 1984 Agreement or implemented offer, exhaustion was futile.

to exhaustion under ERISA suits as "inadequate remedy" or "wrongful denial of meaningful access" to remedies. *See Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Drinkwater*, 846 F.2d at 826; *De Pina*, 674 F.Supp. at 49; *Worsowicz v. Nashua Corp.*, 612 F.Supp. 310, 314 (D.N.H.1985). The latter characterization has been defined as "first, one party has the sole power to invoke the higher levels of the review procedure and has not allowed another party access [and] [s]econd, the other party must have made *attempts* to have the higher levels of review initiated." *Lucas v. Warner & Swasey Co.*, 475 F.Supp. 1071, 1074 (E.D.Pa. 1979) (emphasis in original); *see also Vaca*, 386 U.S. at 185, 87 S.Ct. at 914; *Taylor*, 455 F.Supp. at 818, 820; *Nuest v. Westinghouse Air Brake Co.*, 313 F.Supp. 1228, 1233 (S.D.Ill.1970).

In cases where parties were subject to collective bargaining agreements, courts generally have found that plaintiffs had meaningful access to administrative remedies for their ERISA claims.[9] *See, e.g., King*, 592 F.Supp. at 56 (plaintiff, who filed grievance under provisions of collective bargaining agreement and abandoned request for reinstatement by settling grievance for money, was barred from bringing suit under ERISA); *Tomczyscyn v. Teamsters, Local 115 Health and Welfare Fund*, 590 F.Supp. 211, 215 (E.D.Pa.1984) ("The trustees of the Fund are entrusted with the responsibility of deciding in the first instance the merits of requests for benefits, and they must be given the opportunity to fulfill that office."); *Lucas*, 475 F.Supp. at 1075 ("The Court finds nothing to indicate that Lucas either lacked knowledge of, or failed to understand the applica-

bility or availability of, internal remedies which were clearly set forth in the collective bargaining agreement and in the supplemental employee handbook distributed to all employees by Warner"); *Taylor*, 455 F.Supp. at 820 (plaintiff had meaningful access through claims procedure that complied with requirements of 29 U.S.C. § 1133).[10] *Cf. Baker*, 725 F.Supp. at 420 (Court held plaintiffs were denied meaningful access to remedies but they might have been required to exhaust their remedies available under the collective bargaining agreement if the agreement itself had not foreclosed such a conclusion).[11]

The weight of the case law favors exhaustion of administrative remedies for ERISA claims where grievance procedures under collective bargaining agreements are available. The Court finds the reasoning of the *Lucas* court particularly persuasive. Its facts are similar to those in the instant case. First, the 1984 Agreement was available to Plaintiffs. Second, neither the Unions nor the Defendants were the "sole power[s] to invoke the higher levels of the review procedure and [had] not allowed [Plaintiffs] access" to that procedure. Finally, given that Plaintiffs initiated the first step of the grievance procedure and then abandoned any subsequent steps, Plaintiffs did not make "attempts to have the higher levels of review initiated." Although Defendants concede that they violated disclosure and reporting requirements under ERISA, Plaintiffs were not foreclosed from bringing ERISA claims under the 1984 Agreement. Accordingly, the Court finds that Plaintiffs were not denied meaningful access to administrative remedies.

---

9. Where courts have found that employees were denied meaningful access to administrative remedies in ERISA suits, they generally have not been parties to collective bargaining agreements. *See, e.g., Curry v. Contract Fabricators Incorporated Profit Sharing Plan*, 891 F.2d 842, 846–47 (11th Cir.1990); *Carter v. Signode Industries, Inc.*, 688 F.Supp. 1283, 1288 (N.D.Ill.1988); *Boesl v. Suburban Trust & Savings Bank*, 642 F.Supp. 1503, 1516 (N.D.Ill.1986).

10. The court in *Lucas* also noted that the plaintiff's "persistent and extensive resort to other administrative remedies ... clearly demon-

strates his ability to understand and avail himself of the appropriate administrative remedies and the importance of pursuing them." 475 F.Supp. at 1075.

11. Article XII, § 4 of the collective bargaining agreement in *Baker* stated:

No matter respecting the provisions of the Pension Plan or the Insurance Program shall be subject to the grievance procedure established in this Agreement.

725 F.Supp. at 420.

In sum, the Court concludes that, under Count II, Plaintiffs have failed to prove by a preponderance of the evidence that either they were denied meaningful access to administrative remedies or that exhaustion of their ERISA claim under the 1984 Agreement or implemented offer would have been futile. Accordingly, the Court will dismiss Count II. It will not reach the parties' cross motions for summary judgment on Count II.

### III. *Count III*

■ Although some conflict exists among the circuit courts of appeal regarding exhaustion of statutory violations of ERISA,[12] most courts hold that, unlike claims for denial of benefits under ERISA, plaintiffs are not required to exhaust administrative remedies for statutory-based violations. *See, e.g., Barrowclough v. Kidder Peabody & Co.,* 752 F.2d 923, 941 (3d Cir.1985) ("Congress ... sought 'to protect ... the interests of participants ... by requiring the disclosure and reporting to participants in employee benefit plans and their beneficiaries of financial and other information with respect thereto ... and by providing for ... ready access to the Federal courts.' These rights may not be foreclosed by a contractual arbitration agreement.") (citations omitted); *Cohen v. Gross, Sklar & Metzger,* 703 F.Supp. 388, 390 (E.D.Pa.1989) (Plaintiffs' allegation that defendants failed to supply them with the Summary Plan Description, as required under statute, did not require exhaustion of nonjudicial administrative remedies). *Cf., Viggiano v. Shenango China Div. of Anchor Hocking Corp.,* 750 F.2d 276, 279 (3d Cir.1984) ("Resort to arbitration may still be appropriate where the parties contest the meaning of a term in a collective bargaining agreement."). Of note, the ERISA provision relating to internal claims and appeals procedures, Section 503, refers *only* to procedures regarding claims for benefits, not for statutory violations.[13]

---

**12.** The Ninth and Third Circuits distinguish between plan-based and statute-based claims, and do not require exhaustion of intra-plan remedies for the latter. *See Zipf v. American Telephone and Telegraph Co.,* 799 F.2d 889, 891–92 (3d Cir.1986); *Amaro v. Continental Can Co.,* 724 F.2d 747, 749–50 (9th Cir.1984). Most courts have adopted the position of the Ninth and Third Circuits. *See, e.g., Treadwell,* 666 F.Supp. at 284; *Garry v. TRW, Inc.,* 603 F.Supp. 157, 163–64 (N.D.Ohio 1985).

In contrast, the Fifth and Seventh Circuits have applied the exhaustion doctrine to both plan-based and statute-based claims. *See Mason v. Continental Group, Inc.,* 763 F.2d 1219 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986); *Kross,* 701 F.2d at 1245.

*Kross* has been criticized or questioned in other cases. *See, e.g., Amaro,* 724 F.2d at 752 ("[W]e find *Kross* to be based on a flawed premise, and we refuse to follow it"); *Rauh v. Coyne,* 744 F.Supp. 1186, 1192 (D.D.C.1990) ("*Kross* ... has been repeatedly and sharply criticized for its failure to distinguish between a denial of benefits and the exercise of statutory rights"); *McLendon v. Continental Group Inc.,* 602 F.Supp. 1492, 1504 (D.N.J.1985) ("[T]he court follows the well-reasoned opinion of the Ninth Circuit in [*Amaro*] and rejects the ... opinion ... in *Kross.*").

In adopting the position of the Third and Ninth Circuits, the court in *Treadwell* noted: Despite the language in *Kross* that exhaustion in ERISA cases is "mandatory," the Seventh Circuit has since indicated that *Kross* does not

necessarily require application of the exhaustion doctrine in ERISA cases. *Dale v. Chicago Tribune Company,* 797 F.2d 458 (7th Cir. 1986), *cert. denied,* ... [479 U.S. 1066] 107 S.Ct. 954 [93 L.Ed.2d 1002] (1987). The court in *Dale* stated: 'The rule in this Circuit is clear. The application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the trial court.' *Id.* at 466 (citing *Kross,* 701 F.2d 1238). In sum, the Seventh Circuit has strongly endorsed application of the exhaustion doctrine in ERISA cases, but has also committed that decision to the trial court's discretion.

666 F.Supp. at 283–84.

Similarly, *Mason* has been questioned by other courts. *See, e.g., Lawford v. New York Life Insurance Co.,* 739 F.Supp. 906, 912 (S.D.N.Y.1990); *Treadwell,* 666 F.Supp. at 284.

Some of the aforementioned cases, including *Zipf, Amaro, Mason,* and *Treadwell* involve statutory violations based, at least in part, upon Section 510 of ERISA. The alleged statutory violations in this case are not based upon Section 510.

**13.** 29 U.S.C. § 1133, Section 503, states:

In accordance with regulations of the Secretary, every employee benefit plan shall—
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been

Under Count III, Plaintiffs allege statutory violations of ERISA,[14] namely, that Defendants violated the reporting and disclosure requirements and fiduciary responsibility requirements of ERISA. Complaint ¶ 60.[15] In light of existing case law, the Court finds that Plaintiffs need not have exhausted their administrative remedies before adjudicating their statutory claim under Count III in this Court.[16]

■ Although Plaintiffs argue that Count III should be submitted to arbitration, the Court disagrees and decides Count III on its merits. The Court agrees with the Ninth Circuit's conclusion that "[t]he resolution of statutory issues 'is a primary responsibility of courts,' not arbitrators." *Amaro,* 724 F.2d at 750 (quoting *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 57, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1974)); *see also Barrowclough,* 752 F.2d at 939 ("[C]laims of statutory violations can be brought in a federal court notwithstanding an agreement to arbitrate"). Moreover, courts have held that fiduciary responsibility claims[17] are nonarbitrable disputes. *See, e.g., Waits v. Weller,* 653 F.2d 1288, 1292 (9th Cir.1981); *Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 431 F.Supp. 271, 275–78 (E.D.Pa.1977). *Cf. Fox*

*v. Merrill Lynch & Co.,* 453 F.Supp. 561, 565–66 (S.D.N.Y.1978) ("[Plaintiff] does not allege that either of the defendants are fiduciaries or that they breached fiduciary duties imposed by ERISA"). The Court concludes that Count III should be decided by the Court on its merits.[18]

■ With respect to Plaintiffs' first allegation under Count III that Defendants "concealed" their Severance Plan from Plaintiffs, no evidence exists in the stipulated record of any such concealment. With respect to Plaintiffs' second allegation that Defendants failed to comply with the reporting and disclosure requirements under ERISA, the Court finds that Plaintiffs have met their burden in proving by a preponderance of the evidence that Defendants, in fact, violated those requirements.

Defendants concede that they never filed an annual report for the plan with the Department of Labor. Stip. ¶ 55. They also concede that they never prepared a summary plan description separate and distinct from Mill Rule 23. Stip. ¶ 56. Their failure to file the annual report and to prepare a summary plan description in compliance with 29 C.F.R. § 2520.102–3(b)(3)–(i–ii) violate the reporting and disclosure requirements under 29 U.S.C. § 1021(b).[19]

denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

**14.** Although Plaintiffs raise a claim seeking benefits under ERISA, they raise this claim under Count II, not Count III. As discussed previously, the exhaustion doctrine does apply to plan-based violations of ERISA unless one of the judicially-created exceptions is satisfied.

**15.** Plaintiffs allege that Defendants violated these requirements in one or more of the following respects:

[B]y concealing the Defendant Severance Plan from Plaintiffs.... by failing to comply with the reporting and disclosure requirements of 29 U.S.C. § 1021(b); and ... by failing to have a claims procedure that complies with the provisions of 29 U.S.C. § 1133 of ERISA and applicable Code of Federal Regulations. Complaint ¶ 60.

**16.** Courts have held that plan-based ERISA claims must be exhausted under existing collective bargaining agreements that provide grievance procedures. *See, e.g., Giuffre,* 746 F.Supp. at 240; *Treadwell,* 666 F.Supp. at 284. Courts, however, have been more reluctant to apply this

exhaustion principle to statute-based ERISA claims. As the Ninth Circuit noted: "We will not sanction results where the ability to bring an ERISA claim is dependent in part on the existence of a collective bargaining agreement...." *Amaro,* 724 F.2d at 750.

**17.** Under Count III, Plaintiffs allege that Defendants IP violated the fiduciary responsibility requirements of ERISA. Complaint ¶ 60.

**18.** The Court does not address the arbitrability issues raised by the parties because it has decided the arbitrability issue on another basis. Even if the ERISA claims are arbitrable under the 1984 Agreement as Plaintiffs argue, the Court would still find that it should decide Count III on its merits in light of its statutory basis.

**19.** With respect to Plaintiffs' other allegations regarding reporting and disclosure requirements, the Court finds that Defendants did not violate ERISA by failing to provide Plaintiffs either with summary annual reports or statements of their accrued benefits. Under ERISA, there is no requirement to furnish plan partici-

■ Plaintiffs' third allegation under Count III is that Defendants failed "to have a claims procedure that complies with the provisions of 29 U.S.C. § 1133 of ERISA and applicable Code of Federal Regulations." Complaint ¶ 60(c). They note that "the Plan, as written, has no proper claims procedure. Mill Rule 23 does not contain any provision for obtaining review of a determination to deny benefits as required by 29 U.S.C. ¶ 1102(b)." Plaintiffs' Memorandum at 39. Plaintiffs concede, however, that "Section 7 of the 1984 Agreement arguably contained such provisions." Id.[20]

Defendants argue that "the grievance procedure under the 1984 Agreement and under the implemented offer constituted the requisite claims procedure for purposes of ERISA." Defendants' Memorandum at 19. As authority for their position, Defendants note that "[r]egulations issued by the Department of Labor clearly allow for these procedures to serve as claims procedures under ERISA plans." Id. (citing 29 C.F.R. § 2560.503–1(b)(2)).

Under 29 C.F.R. § 2560.503–1(b)(2), the regulations state that:

> Every employee benefit plan shall establish and maintain *reasonable* claims procedures ... A Claims procedure will be deemed to be *reasonable* only if it ... Is described in the summary plan description, as required by § 2520.102–3 (emphasis added).

Under section 2520.102–3, the federal regulations state that "[s]ection 102 of the Act specifies information that must be included in the summary plan description." [21] Defendants concede that they have "never prepared a summary plan description separate and distinct from Mill Rule 23." Stip. ¶ 56.

The Court finds that, in light of the specific summary plan description requirements under 29 C.F.R. § 2520.102–3, Mill Rule 23 does not conform to those requirements. As a result, the Court concurs with Plaintiffs' assessment that "the Plan, as written, has no proper claims procedure." Plaintiffs' Memorandum at 39.

■ The Court's inquiry, however, does not end with its finding that Defendants violated reporting and disclosure requirements of ERISA and failed to have a requisite claims procedure under ERISA. It must determine whether Plaintiffs had standing to complain about Defendants' violations of ERISA's procedural requirements.

In order to have standing to complain of Defendants' reporting and disclosure violations, Plaintiffs must show some significant reliance on, or possible prejudice flowing from these reporting and disclosure violations. *See, e.g., Meza*, 908 F.2d at 1280 ("Even though Meza did not receive a copy of a Plan Summary as required by [ERISA], he has not shown that the lack of information has harmed him or precluded

---

pants or beneficiaries annual benefits statements from welfare benefit plans *unless requested in writing*. 29 U.S.C. § 1025(a). Further, no requirement exists that a plan administrator of a totally unfunded welfare benefit plan under 29 C.F.R. § 2520.104–44(b)(1)(i) provide plan participants with summary annual reports. 29 C.F.R. § 2520.104b–10(g)(1).

20. Alternatively, Plaintiffs allege that "[i]f Section 7 of the 1984 Agreement contained the claims procedure, as required by 29 U.S.C. § 1133, certainly it made no provision for amendment of the Plan, as was undertaken by IP when it eliminated the provision for arbitration." *Id.* Plaintiffs note that, under 29 U.S.C. § 1102(b)(3), "[e]very employee benefit plan shall ... provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." *Id.*

21. The regulations go on to delineate several requisite factors for summary plan descriptions of collectively bargained plans, including:

> ... [W]ho established or maintain the plan, as well as ... A statement that a complete list of the employers and employee organizations sponsoring the plan may be obtained by participants and beneficiaries upon written request to the plan administrator, and is available for examination by participants and beneficiaries ... A statement that participants and beneficiaries may receive from the plan administrator, upon written request, information as to whether a particular employer or employee organization is a sponsor of the plan and, if the employer or employee organization is a plan sponsor, the sponsor's address.

29 C.F.R. § 2520.102–3(b)(3)–(i)–(ii).

ng> type"eader_navigation">**1020**

him from pursuing his administrative remedies...."); *Govoni v. Bricklayers, Masons and Plasterers International Union, Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir.1984) ("Govoni must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description"); *Garavuso v. Shoe Corps. of America Industries, Inc.,* 709 F.Supp. 1423, 1430 (S.D.Ohio 1989), *aff'd without opinion,* 892 F.2d 79 (6th Cir.1989) ("There has been no showing that [plaintiff] was prejudiced by the ERISA procedural violations acknowledged by defendant"); *Kamenstein v. Jordan Marsh Co.,* 623 F.Supp. 1109, 1112 (D.Mass.1985) (Garrity, D.J.) ("[P]laintiff has failed to establish any prejudice flowing from defendants' noncompliance. The record amply supports the conclusion that plaintiff had actual knowledge of all the information which he now complains defendants failed to report or disclose"); *Risch v. Waukesha Title Co.,* 588 F.Supp. 69, 72 (E.D.Wis.1984) ("A plaintiff has no right to an equitable remedy for procedural violations under ERISA unless he has thereby been prejudiced."); *Hillis v. Waukesha Title Co.,* 576 F.Supp. 1103, 1109 (E.D.Wis. 1983) ("A mere procedural violation may not give rise to a substantive remedy. Therefore, a showing of injury may be essential to the plaintiff's right to equitable relief, for there may be some violations of ERISA's reporting and disclosure provisions that do not result in cognizable injury.").

The case of *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), represents the sole example where the court found that procedural violations of ERISA worked substantial harm and warranted a substantive remedy. *Id.* at 1353–54.[22] In *Blau,* the court noted that the employer's violations of ERISA's procedural requirements in implementing a secret severance pay policy rose to such a level that "they alter[ed] the substantive relationship between employer and employee that disclosure, reporting and fiduciary duties sought to balance somewhat more equally." *Id.* at 1357.

The Court finds the holding of the *Berger* case to be more properly applicable here. In *Berger,* the employer conceded that it "violated ERISA's procedural requirements by failing to describe or distribute the severance pay policy to its employees. In addition, there was no claims procedure under the severance pay policy. The written terms of the policy are rather cryptic." 911 F.2d at 920. Despite these violations, the court noted that the employer's procedural violations and its administration of the severance pay policy did not rise to the level of violations in *Blau. Id.* The court distinguished *Blau* in noting that no evidence existed that the employer *actively concealed its severance pay policy* nor was there evidence to indicate that the employer *was administering its severance pay policy unfairly. Id.* at 921. The court concluded that the employer did not breach its fiduciary duty by denying severance pay to its employees. *Id.*

Moreover, the facts of *Garavuso* are strikingly similar to those in this case. In *Garavuso,* the defendant admitted that:

> [A] summary plan description was not furnished to employees or filed with the

**22.** Courts have either distinguished the facts of *Blau* or criticized its holding to find that employers' procedural violations of ERISA did not result in substantial harm. *See, e.g., Berger v. Edgewater Steel Co.,* 911 F.2d 911, 921 (3rd Cir.1990) ("Edgewater's procedural violations and its administration of the severance pay policy do not rise to the level of violations in *Blau* ..."), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1170 (3d Cir.1990) ("*Blau*'s rather freewheeling statutory construction, even embarked upon to vindicate correctly perceived underlying purposes, has little place in the context of a carefully balanced and reti-

culated statute like ERISA ... We decline to follow *Blau* accordingly"); *Simmons v. Diamond Shamrock Corp.,* 844 F.2d 517, 524 (8th Cir.1988) ("[Employer] never concealed the Divestiture policy[;] ... plaintiffs ... knew of the policy's existence[;] ... the policy was not applied in a discriminatory manner"); *Pabst Brewing Co. v. Anger,* 610 F.Supp. 214, 216 (D.Minn. 1985), *aff'd,* 784 F.2d 338 (8th Cir.1986) ("Defendants' claims that plaintiff has failed to comply with certain procedural provisions of ERISA warrant comment. Such claims are largely unsubstantiated and in any case fall short of the level of secrecy and noncompliance found in *Blau* ...").

Secretary of Labor, that no modifications of the plan were filed with the Secretary, and that no annual report was filed with the Secretary. Defendant also admits that the written plan instrument did not specifically designate named fiduciaries to manage the operation and administration of the plan or otherwise delegate responsibility for plan administration, nor did the plan specify procedures for amending the plan. Defendant further acknowledges that it did not maintain a claims procedure, provide written notice of denial of benefits, or furnish its employees with a statement of their rights under ERISA.

709 F.Supp. at 1430.

Despite these multiple technical violations of ERISA, the court concluded that plaintiff had produced no evidence to show how any of these violations resulted in prejudice to him. *Id.* The court noted that evidence in the record revealed that a written document outlining the severance pay plan was included in a policy notebook to which the plaintiff had access. *Id.*[23]

For similar reasons, the Court concludes that Plaintiffs were not prejudiced by the ERISA procedural violations acknowledged by defendant. Defendants concede that they never filed an annual report for the Plan with the Department of Labor and never prepared a summary plan description separate and distinct from Mill Rule 23. Stip. ¶¶ 55–56. They argue, however, that such violations do not entitle Plaintiffs to substantive relief. Defendants' Memorandum in Opposition at 15. Defendants' note that Mill Rule 23 ("Severance Pay"), has been in the collective bargaining agreements at the Androscoggin Mill for over twenty-five years. *Id.* at 16 (citing Stip. ¶¶ 10, 15, 16). Further, the terms of these agreements have been available to all union members. Stip. ¶ 31.

Similar to the defendants in *Garavuso* and *Berger,* Defendants violated several ERISA procedural requirements, including the failure to provide a summary plan description to Plaintiffs or the Secretary of Labor, failure to file an annual report with the Secretary, and failure to maintain a claims procedure. Defendants maintained a written severance pay plan to which Plaintiffs had access (Mill Rule 23). Lastly, similar to the *Garavuso* plaintiff, Plaintiffs took legal action to assert a claim for benefits by, in this case, filing the first step of the grievance procedure.

Although Defendants have violated procedural requirements of ERISA, the Court concludes that such violations do not rise to the level of violations found in *Blau* so as to warrant substantive remedies. Unlike *Blau,* Defendants did not maintain a secret severance pay policy that it actively concealed by keeping it confidential. Mill Rule 23 clearly spelled out Defendants' severance pay policy, a policy to which Plaintiffs referred in their submission of their grievance under the grievance policy's first step.

Plaintiffs' allegations of prejudice are unpersuasive and focus primarily on the individual Plaintiffs' claims that subsequently have been settled. *See* Plaintiffs' Opposition at 4. They allege that the amendment of the claims procedure to eliminate arbitration of claims prejudiced them. *Id.* Plaintiffs, however, present no evidence to demonstrate how the amendment prejudiced them as group Plaintiffs under ERISA.

The court concludes that Plaintiffs have failed to prove by a preponderance of the evidence that they were prejudiced by Defendants' reporting and disclosure violations under ERISA. Accordingly, the Court finds that they are entitled neither to injunctive relief under 29 U.S.C. § 1132(a) nor to a reasonable attorney's fee. Count III will be dismissed.

### IV. *Count IV*

Plaintiffs allege under Count IV that they did not exhaust their administrative remedies because it would have been futile to do so. Complaint ¶ 65.

---

**23.** Among evidence in the record in *Garavuso* was the deposition of the former associate director of employee relations and compensation with the employer who testified that the sever-

ance pay plan was not a secret policy and was available for employees to look at. The evidence also showed that the plaintiff took legal action to assert a claim for benefits. *Id.*

To support this allegation, Plaintiffs raise numerous stipulated facts. Plaintiffs' Memorandum at 19. They note that before they filed the group severance pay grievance, Defendants had already served notice that they would deny the grievance. *Id.* at 20. On August 12, 1987, eight weeks after the strike commenced, Plaintiffs requested that Defendants pay severance pay to the strikers. Stip., ¶ 19 and Joint Exhibit (hereinafter "JTX") 6 thereto. Defendants rejected this request, asserting that the strikers were not laid off. Stip. ¶ 19 and JTX 7 thereto. On November 13, 1987, at a negotiating session at which the parties discussed the payment of severance pay to employees laid off as a result of the implemented offer, the Plaintiffs questioned why the strikers would not be paid severance pay. Stip. ¶ 28. Defendants asserted that strikers were not entitled to severance pay because the strike was "employee action," not "company action." *Id.* In a letter dated February 1, 1988, sent to all strikers, Defendants stated that "strikers who have been permanently replaced are not eligible for severance pay." Stip. ¶ 58 and JTX 24 thereto.

On December 8, 1988, Meserve filed a grievance seeking payment of severance pay for all employees not recalled within six weeks of the end of the strike. Stip. ¶ 39.[24] On February 14, 1989, Defendants denied the Plaintiffs' grievance for severance pay on behalf of the group Plaintiffs. Stip. ¶ 41, JTX 18 thereto.[25]

Plaintiffs then failed to request a second and third step in the grievance procedure under the 1984 Agreement and implemented offer. Stip. ¶¶ 42–43, 45–46. They also failed to request arbitration under the arbitration provision of the 1984 Agreement, Stip. ¶ 44, or to request arbitration under the implemented offer. Stip. ¶ 47. Instead, on March 21, 1989, Plaintiffs filed with the National Labor Relations Board (hereinafter "NLRB") a charge against Defendants, alleging, among other things, that IP's refusal to pay any severance benefits to the group Plaintiffs constituted an unfair labor practice. Stip. ¶ 48 and JTX 19 thereto. Defendants took the position before the NLRB that it was not obliged to pay any severance benefits to the group Plaintiffs. Stip. ¶ 49. The NLRB refused to issue a complaint for an unfair labor practice against Defendants. *Id.* at 50.[26]

Defendants argue that Plaintiffs did not exhaust their claims under the grievance procedure of either the implemented offer or the 1984 Agreement,[27] and that they

**24.** Prior to receiving the step one answer, Plaintiffs received a letter dated January 4, 1989 from Defendants who asserted that they had no obligation to arbitrate, let alone pay, the individual severance pay grievances. Stip. ¶ 36 and JTX 15 thereto. Although these severance pay grievances are not identical to the group severance pay grievances, they both arise from the same 1984 Labor Agreement between IP and the Unions (hereinafter "the 1984 Agreement").

**25.** The letter signed by Glen Zalkin, Manager, Employee Relations, of IP stated in relevant part:

Grievants do not qualify for severance pay under Section 23(1) of the expired agreement. Moreover, the grievance is untimely.

JTX 18.

**26.** The stipulated fact that IP took the position before the NLRB that it did not owe any severance pay to the group Plaintiffs (¶ 49) contributes nothing to Plaintiffs' allegation of futility. The Court agrees with Defendants' assertion that "[s]ince this action did not arise until March 24, 1989—*after* Plaintiffs should have invoked the second step of the grievance procedure—they could hardly have relied upon IP's

position in that action as a basis for failing to pursue further administrative remedies." Defendants' Memorandum at 8 n. 3 (citation omitted).

**27.** Section 7 of the 1984 Agreement, "Adjustment of Complaints," states:

A. Complaints arising in any department of the plant covered by this Agreement shall be reported to the Department Superintendent, either in writing by the Secretary of the local union, or in writing or orally by the duly constituted adjustment committee of the local Union. No grievance shall be considered unless the grievance is submitted within thirty (30) calendar days after the aggrieved employee should reasonably have discovered that the alleged wrong occurred or existed. The Department Superintendent shall make a reply, either in writing or orally (written complaints will be answered in writing), within forty-eight (48) hours stating the adjustment he has made of the complaint. If the Department Superintendent fails to adjust the complaint in a satisfactory manner, the question shall be referred to the Manager of Industrial Rela-

have failed to prove that exhaustion of their administrative remedies would have been futile. Defendants' Memorandum in Opposition at 8–10.

▮ An employee must ordinarily exhaust administrative remedies under a collective bargaining agreement before instituting a civil action against his or her employer. *See Vaca*, 386 U.S. at 184, 87 S.Ct. at 913; *Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc.*, 822 F.2d 188, 192 (1st Cir.1987); *Sciaraffa v. Oxford Paper Co.*, 310 F.Supp. 891, 901 (D.Me.1970). As noted by this Court, "the doctrine of exhaustion of administrative remedies functions to prevent disruption of administrative processes by withholding judicial review until an agency has developed relevant facts, applied its expertise and exercised the discretion entrusted to it by law." *Stinson Canning Co. v. Mosbacher*, 731 F.Supp. 32, 34 (D.Me.1990) (citing *Elton Orchards, Inc. v. Brennan*, 508 F.2d 493 (1st Cir.1974)); *see also McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969).[28] The doctrine "is not to be applied inflexibly." *McGee v. United States*, 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971). It must be applied in each case with an "under-standing of its purposes and of the particular administrative scheme involved." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972).

Where pursuit of administrative remedies under collective bargaining agreements would not effectuate the purposes behind the exhaustion doctrine, courts have created limited exceptions, including futility. *See Glover v. St. Louis–San Francisco R. Co.*, 393 U.S. 324, 331, 89 S.Ct. 548, 552, 21 L.Ed.2d 519 (1969); *Cabarga Cruz*, 822 F.2d at 192; *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 18 n. 1 (1st Cir.1979); *Sciaraffa*, 310 F.Supp. at 902.[29] The First Circuit has upheld the exhaustion doctrine where plaintiffs have failed to provide sufficient evidence of futility. *Confederacion Laborista de Puerto Rico v. Cerveceria India*, 778 F.2d 65, 66 (1st Cir.1985) ("[T]here is no evidence that ... resort to the grievance procedure would have been futile"). *Cf. Sciaraffa*, 310 F.Supp. at 902 ("[S]ince the Union had only three days under the contract to appeal the company's denial in the first step, it is obvious that any effort by plaintiffs to appeal the membership decision to the International Union would have been futile.").

---

tions, who shall meet with the Committee and the Department Superintendent.

B. If the Manager of Industrial Relations fails to adjust the complaint in writing in a satisfactory manner within five (5) days, the local Union has the right to appeal to the International President of the International Union, who may either personally or through his representative refer the matter in dispute to the Androscoggin Mill Manager.

C. If the Mill Manager or his representative and the International President of the International Union or his representatives are unable to reach a satisfactory settlement of the complaint within ten (10) days, it shall be submitted to arbitration. The party choosing to arbitrate shall give written notice of such intent to the other party within thirty (30) calendar days.

D. If the matter in dispute is to be submitted to arbitration, the International representative and the Mill Manager or his representative will jointly select an arbitrator....

E. The Arbitrator shall render his award within fifteen (15) days after the close of the hearing unless extended by mutual consent of the parties in writing. The decision of the Arbitrator shall be final and binding on all parties.
JTX 2 at 11–12.

28. As the Supreme Court noted:

Closely related to the above reasons is a notion peculiar to administrative law. The administrative agency is created as a separate entity and invested with certain powers and duties. The courts ordinarily should not interfere with an agency until it has completed its action, or else has clearly exceeded its jurisdiction. As Professor Jaffe puts it, '[t]he exhaustion doctrine is, therefore, an expression of executive and administrative autonomy.'

*McKart*, 395 U.S. at 194, 89 S.Ct. at 1663 (citation omitted).

29. Where plaintiffs have alleged futility as the basis for their failure to exhaust available administrative remedies, some circuits have required a "clear and positive showing of futility" before suspending the exhaustion requirement. *See, e.g., Springer v. Wal–Mart Associates Group Health Plan*, 908 F.2d 897, 901 (11th Cir.1990); *Fizer v. Safeway Stores, Inc.*, 586 F.2d 182, 183 (10th Cir.1978).

Where courts have excused exhaustion because of employees' allegations of futility, the evidence has tended to be compelling. *See, e.g., Glover,* 393 U.S. at 331, 89 S.Ct. at 552 (black employees were told by both union and employer that "they were kidding themselves if they thought they would ever get white men's jobs"); *United States, etc., Roofers Local 307 v. G & M Roofing & Sheet Metal Co.,* 732 F.2d 495, 501 (6th Cir.1984) (court held it could be plainly futile to insist that union resort to joint arbitration when employer argued that it had never obligated itself to observe the contract).

Given that the exhaustion doctrine must be applied on a case-by-case basis with an "understanding of its purposes and of the particular administrative scheme involved," the Court must address what purposes, if any, would have been served by Plaintiffs' continued compliance to the grievance procedure. The Court finds that several factors "pulling toward requirement of exhaustion" are present in this case, including the need for further factual development, and the importance of upholding the internally-created grievance procedures of the parties.

The Court notes that grievance procedure are designed to address internal disputes and to avoid unnecessary judicial interference. These procedures should be exhausted unless Plaintiffs can prove one of the judicially-created exceptions, such as futility. They cannot be circumvented merely because it is believed without clear factual basis that the company will resolve the issue in a manner unfavorable to the claimant.[30]

The Court concludes here, as in respect to its conclusions regarding futility under Plaintiffs' ERISA claims, that Plaintiff has failed to prove by a preponderance of the evidence that exhaustion of administrative remedies under the 1984 Agreement or implemented offer would have been futile. Accordingly, Count IV will be dismissed.

### V. *Count V*

The Court finds that Plaintiffs' failure to exhaust their administrative remedies under the 1984 Agreement and implemented offer also preclude any consideration of Count V. Accordingly, for the same reasons that it dismisses Count IV, the Court dismisses Count V. Therefore, the Court will not reach the parties' cross-motions for summary judgment on Count V.

Accordingly, it is hereby ORDERED that Counts II, III, IV, and V of Plaintiffs' Complaint be, and they are hereby, DISMISSED, judgment to enter.

So ORDERED.

---

**30.** As Defendants noted:

Plaintiffs would have this Court hold that *any* denial of benefits excuses exhaustion of further claims procedures where a claimant merely presupposes that further steps will lead to the same result. The latter stages in a grievance procedure allow claimants such as Plaintiffs an opportunity to present additional information and evidence that may not have been before the decision maker initially. Under Plaintiffs' theory, however, all grievance steps after the first would be superfluous, since they are only invoked when a claim is initially denied.

Defendants' Memorandum in Opposition at 8–9.